**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| JAMOYA A.,[1] | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| v. | )   Civil No. 3:22-cv-804-RCY-SLS |
| | ) |
| MARTIN O'MALLEY, | ) |
| Commissioner of the | ) |
| Social Security Administration,[2] | ) |
| | ) |
| *Defendant.* | ) |
| | ) |

## REPORT AND RECOMMENDATION

In this action, Plaintiff Jamoya A. seeks review of the Commissioner of the Social Security Administration's ("SSA") decision to deny her Title II application for disability insurance benefits. This matter comes before the Court for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B) on cross-motions for summary judgment. (ECF Nos. 12, 16.) The motions have been fully briefed (ECF Nos. 12, 13, 16, 17), rendering this matter ripe for review.

Plaintiff requests that the Commissioner's decision be vacated and remanded for a *de novo* hearing and new decision. (Plaintiff's Brief in Support of Motion for Summary Judgment (ECF No. 13) ("Pl.'s Mem.") at 16.) As the basis for such relief, Plaintiff argues that the Administrative Law Judge ("ALJ") erred by: (1) failing to properly analyze whether Plaintiff's severe impairment

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that federal courts refer to claimants by their first names and last initials in social security cases.

[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, he has been substituted for Acting Commissioner Kilolo Kijakazi as Defendant in this action. No further action need be taken to continue this suit. 42 U.S.C. § 405(g).

of fibromyalgia medically equaled a listing, either singly or in combination and (2) discounting Plaintiff's subjective complaints regarding symptoms of fibromyalgia based on objective medical evidence.  (Pl.'s Mem. at 8-15.)   In response, the Commissioner argues that: (1) substantial evidence supports the ALJ's step three finding that Plaintiff's fibromyalgia did not meet or medically equal a listing and (2) the ALJ properly evaluated Plaintiff's subjective statements and balanced those with the objective medical evidence and Plaintiff's activities of daily living in formulating Plaintiff's residual functional capacity ("RFC").  (Defendant's Motion for Summary Judgment and Brief in Support Thereof (ECF No. 16) ("Def.'s Mem.") at 11-18.)  Therefore, the Commissioner argues the decision should be affirmed.  (Def.'s Mem. at 19.)

As discussed below, the Court concludes that the ALJ applied correct legal standards in finding that Plaintiff's fibromyalgia did not medically equal a listing, either singly or in combination and that substantial evidence supports the ALJ's finding.  The Court, however, concludes that the ALJ did not apply correct legal standards in analyzing Plaintiff's subjective complaints.   Specifically, the ALJ improperly considered objective medical evidence in discrediting Plaintiff's subjective complaints relating to her fibromyalgia.  Although the ALJ assessed Plaintiff's subjective complaints against other factors as well, the United States Court of Appeals for the Fourth Circuit has held "that ALJs may not rely on objective evidence (or the lack thereof)—even as just one of multiple factors—to discount a claimant's subjective complaints regarding symptoms of fibromyalgia . . . ."  *Arakas v. Comm'r of Soc. Sec. Admin.*, 983 F.3d 83, 97 (4th Cir. 2020).  This error requires remand to allow the ALJ to properly consider Plaintiff's subjective complaints in determining Plaintiff's RFC.[3]

---

[3] Plaintiff also argues that the ALJ improperly relied on outdated and unreliable vocational expert ("VE") testimony at step five of the sequential evaluation.  (Pl.'s Mem. at 15-16.)  Specifically, Plaintiff contends that one of the three occupations identified by the VE at step five is obsolete.

For these reasons and those that follow, the Court RECOMMENDS that: (1) Plaintiff's Motion for Summary Judgment (ECF No. 12) be GRANTED IN PART and DENIED IN PART; (2) the Commissioner's Motion for Summary Judgment (ECF No. 16) be DENIED; (3) the final decision of the Commissioner be REVERSED; (4) the case be REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Report and Recommendation; and (5) final judgment be entered under Rule 58 of the Federal Rules of Civil Procedure.

## I.    PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits on January 28, 2020, alleging disability beginning on January 14, 2019.  (Administrative Record ("R.") at 60, 75, 182-83.)[4]  In her application, Plaintiff alleged that she suffered from endometriosis, post traumatic disorder, paralysis of sciatic nerve, auto-immune disease, limited flexion of the thigh/knee, intervertebral disc syndrome, and hypothyroidism.  (R. at 60.)  The SSA denied Plaintiff's claims initially and again upon reconsideration.  (R. at 101-05, 112-14.)  Plaintiff requested a hearing before an ALJ, and one was held on April 12, 2022.  (R. at 37-59, 119-20.)

On April 26, 2022, the ALJ issued a written decision, holding that Plaintiff was not disabled under the Social Security Act ("the Act").  (R. at 11-25.)  On October 24, 2022, the SSA Appeals

---

(Pl.'s Mem. at 15.)  In response, the Commissioner asserts that even if one occupation is obsolete as Plaintiff contends, the VE properly identified two other jobs that existed in significant numbers in the national economy that Plaintiff could perform based on her vocational factors and RFC. (Def.'s Mem. at 18-19.)  Because the Court concludes that the ALJ erred in conducting the RFC assessment and recommends remand on that basis, the Court declines to address this argument.

[4] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for the year of birth), and financial account numbers from this Report and Recommendation. The Court will further restrict its discussion of Plaintiff's medical information to the extent necessary to result in a proper analysis of the case.

Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (R. at 1-4.)  Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

## II.      STANDARD OF REVIEW

The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  An individual has a disability "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." *Id.* § 423(d)(2)(A).

SSA regulations set forth a five-step process to determine whether an individual is disabled. 20 C.F.R. § 404.1520(a)(4); *see Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015) (describing the ALJ's five-step sequential evaluation).  At step one, the ALJ must review the claimant's current work activity to determine if he or she has been participating in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i).  At step two, the ALJ must ask whether the claimant's medical impairments meet the regulations' severity and duration requirements.  *Id.* § 404.1520(a)(4)(ii). At step three, the ALJ must determine whether the medical impairment(s) meet or equal an impairment listed in the regulations.  *Id.* § 404.1520(a)(4)(iii).  Between steps three and four, the ALJ must determine the claimant's RFC, which accounts for the most that the claimant can do despite his or her impairments.  *Id.* § 404.1545(a).

At step four, the ALJ must assess whether the claimant can perform his or her past employment given the claimant's RFC.  *Id.* § 404.1520(a)(4)(iv).  The burden of proof remains

with the claimant through step four of the analysis, and the claimant must prove that his or her limitations preclude him or her from performing his or her past relevant work.  *See Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012).  If such past work can be performed, then benefits will not be awarded, and the analysis ends.  *See* 20 C.F.R. § 404.1520(e).  However, if the claimant cannot perform his or her past work, the analysis proceeds to step five, and the burden then shifts to the Commissioner to show that the claimant can perform other work that is available in the national economy.  *See id.* § 404.1520(a)(4)(v).  The Commissioner usually offers this evidence through the testimony of a vocational expert ("VE").  *See Mascio*, 780 F.3d at 635.

In reviewing the Commissioner's decision to deny benefits, a court will affirm the SSA's "disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'"  *Mascio*, 780 F.3d at 634 (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)).  Substantial evidence requires more than a scintilla but less than a preponderance of evidence and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion.  *See Hancock*, 667 F.3d at 472; *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  The substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts."  *Dunn v. Colvin*, 607 F. App'x 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)).  Thus, a decision by the Commissioner is not subject to reversal merely because substantial evidence would have supported a different conclusion.  *Id.*

To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "reweigh conflicting evidence, make credibility determinations, or substitute

[its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)); *see Craig*, 76 F.3d at 589. The Court must consider the support for the Commissioner's decision and "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). If a fact is supported by substantial evidence, the reviewing court must affirm, regardless of whether the court agrees with such findings. *Hancock*, 667 F.3d at 476 (citing *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996)). If the Commissioner's findings are arbitrary or unjustified, then they are not supported by substantial evidence, and the reviewing court must reverse the decision. *See Breeden*, 493 F.2d at 1007.

### III. THE ALJ'S DECISION

The ALJ analyzed Plaintiff's disability claim in accordance with the five-step evaluation process. (R. at 11-25.) *See* 20 C.F.R. § 404.1520(a)(4); *Mascio*, 780 F.3d at 634. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 14, 2019 (the alleged onset date). (R. at 13.) At step two, the ALJ determined Plaintiff suffered from the following severe impairments: fibromyalgia, rheumatoid arthritis, obesity, degenerative disc disease of the cervical spine, bipolar disorder, post-traumatic stress disorder ("PTSD"), and alcohol abuse disorder. (R. at 13-14.)

At step three, the ALJ determined that Plaintiff did not have an impairment, individually or in combination, which met or equaled a disability listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 14-17.) Regarding fibromyalgia, the ALJ acknowledged:

> Pursuant to Social Security Ruling 12-2p, fibromyalgia is a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months. A diagnosis of fibromyalgia must be made by a physician and it must be consistent with a history of widespread pain in all four quadrants of the body which has persisted for at least 3 months; at least 11 positive tender points found on physical examination,

6

> or repeated manifestations of six or more fibromyalgia symptoms, signs, or co-
> occurring conditions; and evidence that other disorders that could cause the
> symptoms or signs were excluded.  As it is not addressed by a listing section, the
> symptoms must additionally be evaluated to determine if any other listing has been
> met.  [Plaintiff's] obesity, fibromyalgia, and combined physical impairments do not
> effectively meet the requirements of any listing section in Appendix 1.

(R. at 14.)   The ALJ specifically considered listing 14.09 and concluded Plaintiff did not meet the

criteria for such listing.  (R. at 15.)  The ALJ explained: "As documented in further detail below,

while [Plaintiff's] pain is consistently documented, it has not resulted in marked physical

restrictions.  Her symptoms are effectively monitored and managed on an outpatient basis.  Follow-

up assessments continue to document grossly normal gait, station, ranges of motion, and strength.

There is no evidence of the complications anticipated by this listing section."  (R. at 15.)

The ALJ then determined Plaintiff's RFC.  (R. at 17-23.)  Based on the evidence in the

record, the ALJ found that Plaintiff retained the ability to perform sedentary work as defined in 20

C.F.R. § 404.1567(b) with the following limitations:

> [Plaintiff] can occasionally balance, stoop, kneel, crouch, or climb ramps and stairs.
> She can never crawl or climb ladders, ropes, or scaffolds.  [Plaintiff] can frequently
> reach, handle, finger, or feel with the bilateral upper extremities.   She can
> occasionally push or pull with the bilateral upper extremities.  She must be allowed
> to use a cane to ambulate as needed, and she must avoid all exposure to vibration
> and hazards. [Plaintiff] can understand, remember, apply, and carry out simple,
> routine tasks, consistent with unskilled work for two hours at one time with normal
> breaks.  She can concentrate, persist, and maintain pace to complete unskilled tasks
> that do not require a production rate pace meaning fast pace.  She can have
> occasional contact with coworkers and the public.  Finally, she can adapt to the
> occasional changes associated with unskilled work.

(R. at 17.)

The ALJ explained that she determined Plaintiff's RFC after considering "all symptoms

and the extent to which these symptoms can reasonably be accepted as consistent with the objective

medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-

3p." (R. at 17.)  The ALJ acknowledged Plaintiff's testimony about experiencing physical pain "throughout [her] body" (R. at 18, 45), with flares every three to four months that last for several days to a week at a time (R. at 18, 48).  Plaintiff reported using medications to alleviate the pain and going to the emergency room for injections if the medications did not help.  (R. at 18, 49.) She testified to using a walker and a quad-point cane to assist with walking, but admitted to being able to walk short distances without a cane.  (R. at 18, 47.)  Further, she reported difficulty using her hands and lifting her arms, issues with memory and confusion, frequent migraines, panic attacks, and mood irregularities.  (R. at 18, 45-46, 50, 52-53.)  Plaintiff stated that she lies down 18 hours per day.  (R. at 18, 48.)  She testified to cooking simple meals, loading the dishwasher, shopping online, and using her phone (but not for extended periods of time).  (R. at 18, 52.)  She stated that she can shower herself but has a history of falling.  (R. at 18, 51.)  Although the ALJ found that Plaintiff's impairments could reasonably be expected to cause the alleged symptoms, the ALJ determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record, including the physical assessments and Plaintiff's daily activities.  (R. at 18-22.)

After completing the RFC assessment, the ALJ determined Plaintiff's vocational factors. She found that Plaintiff was unable to perform any past relevant work (namely, as an administrative office clerk) and had at least a high school education.  (R. at 23.)  The ALJ noted that Plaintiff met the definition of a younger individual age 18-44 at the alleged onset date, but subsequently changed age categories to a younger individual age 45-49.  (R. at 23.)

At step five, the ALJ concluded that there were jobs in significant national numbers that Plaintiff could perform given her limitations.  (R. at 23.)  The ALJ adopted the VE's testimony

that Plaintiff could perform the jobs of addresser (with approximately 104,000 jobs in the national economy), table worker (41,000 nationally), and inspector (96,000 nationally).  (R. at 23-24.)  Therefore, the ALJ determined that Plaintiff had not been under a disability from January 14, 2019 (the alleged onset date) through April 26, 2022 (the date of the decision).  (R. at 24.)

## IV.    ANALYSIS

In reviewing the Commissioner's decision to deny Plaintiff's application, the Court must determine whether: (1) the ALJ has applied the correct legal standards; and (2) the ALJ's findings are supported by substantial evidence.  *Mascio*, 780 F.3d at 634 (citing *Bird*, 699 F.3d at 340).  "In reviewing for substantial evidence, [a court must not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]."  *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001).  Consequently, as long as the judgment is explained and supported by substantial evidence, this Court must accept the Commissioner's decision, even if this Court would reach an opposite conclusion or weigh the evidence differently if it were conducting a *de novo* review of the record.  *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Rhyne v. Astrue*, No. 3:09-cv-412, 2011 WL 1239800, at *3 (W.D.N.C. Mar. 30, 2011).

For the reasons that follow, this Court concludes that: (1) the ALJ properly concluded that Plaintiff's fibromyalgia did not meet a listing, either singly or in combination, under the regulations and that substantial evidence supports her findings and (2) the ALJ applied incorrect legal standards in considering objective medical evidence as one factor in analyzing Plaintiff's subjective complaints during the RFC assessment, warranting remand.

**A. Substantial Evidence Supports the ALJ's Findings at Step Three that Plaintiff's Fibromyalgia Does Not Meet a Listing, Either Singly or in Combination**

In her first assignment of error, Plaintiff contends that the ALJ failed to "explain[] why Plaintiff's severe impairment of fibromyalgia does not medically equal [L]isting 14.09." (Pl.'s Mem. at 12.) She argues that the medical records show that her fibromyalgia meets this listing. (Pl.'s Mem. at 9-10.) Defendant counters that Plaintiff "did not meet the strict standard of medically equaling a listing (specifically, Listing 14.09 here) . . . ." (Def.'s Mem. at 12.) A review of the ALJ's decision shows that the ALJ properly considered whether Plaintiff's fibromyalgia met a listing, either singly or in combination, and sufficiently explained her finding that it did not.

*1. Criteria under Listing 14.09*

The listings define impairments that prevent an individual from performing any gainful activity, not just substantial gainful activity. *See Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). They "were designed to operate as a presumption of disability that makes further inquiry unnecessary" and, consequently, require an exacting standard of proof. *Id.* at 530-32. "For a claimant to show that his [or her] impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* at 530. Plaintiff bears the burden of proving that she meets or equals a listing. *See Hancock*, 667 F.3d at 472.

The regulations provide that if an individual has an impairment that is not described in the listings, the Commissioner "will compare [the claimant's] findings with those for closely analogous listed impairments. If the findings related to [the claimant's] impairment(s) are at least of equal medical significance to those of a listed impairment, [the Commissioner] will find that [the claimant's] impairment(s) is medically equivalent to the analogous listing." 20 C.F.R. §

404.1526(b)(2).  SSA listing sections do not specifically address fibromyalgia.  SSR 12-2p.  "At step 3, therefore, [the ALJ must] determine whether [fibromyalgia] medically equals a listing (for example, [L]isting 14.09D in the listing for inflammatory arthritis), or whether it medically equals a listing in combination with at least one other medically determinable impairment."  *Id.*

To meet the requirements of Listing 14.09, titled Inflammatory Arthritis, Plaintiff must show:

> A. Persistent inflammation or persistent deformity of:
> 1. One or more major peripheral joints in a lower extremity (see 14.00C8) and medical documentation of at least one of the following:
> a. A documented medical need (see 14.00C6) for a walker, bilateral canes, or bilateral crutches (see 1.00C6d) or a wheeled and seated mobility device involving the use of both hands (see 1.00C6e(i)); or
> b. An inability to use one upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements (see 14.00C7), and a documented medical need (see 14.00C6) for a one-handed, hand-held assistive device (see 1.00C6d) that requires the use of the other upper extremity or a wheeled and seated mobility device involving the use of one hand (see 1.00C6e(ii)); or
> 2. One or more major peripheral joints in each upper extremity (see 14.00C8) and medical documentation of an inability to use both upper extremities to the extent that neither can be used to independently initiate, sustain, and complete work-related activities involving fine and gross movements (see 14.00C7).
> or
> B. Inflammation or deformity in one or more major joints of an upper or a lower extremity (see 14.00C8) with:
> 1. Involvement of two or more organs/body systems with one of the organs/body systems involved to at least a moderate level of severity; and
> 2. At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss).
> or
> C. Ankylosing spondylitis or other spondyloarthropathies, with:
> 1. Ankylosis (fixation) of the dorsolumbar or cervical spine as shown by appropriate medically acceptable imaging and measured on physical examination at 45° or more of flexion from the vertical position (zero degrees); or
> 2. Ankylosis (fixation) of the dorsolumbar or cervical spine as shown by appropriate medically acceptable imaging and measured on physical examination at 30° or more of flexion (but less than 45°) measured from the vertical position

11

(zero degrees), and involvement of two or more organs/body systems with one of the organs/body systems involved to at least a moderate level of severity.
or

D. Repeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:

      1. Limitation of activities of daily living.
      2. Limitation in maintaining social functioning.
      3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. Part 404, Subpart P, Appendix 1, § 14.09.

*2. The ALJ's Step Three Analysis*

The ALJ properly considered whether Plaintiff's fibromyalgia met a listing, whether singly or in combination with other impairments, in accordance with the regulations. The ALJ acknowledged SSR 12-2p in her opinion. (R. at 14.) She noted that fibromyalgia is "not addressed by a listing section" and therefore "symptoms must additionally be evaluated to determine if any other listing has been met." (R. at 14.) She concluded that Plaintiff's fibromyalgia did not meet a listing, singly or combined. (R. at 14.)

The ALJ also specifically considered the criteria under Listing 14.09 and concluded that Plaintiff did not meet those requirements. (R. at 15.) The ALJ explained: "As documented *in further detail* below, while [Plaintiff's] pain is consistently documented, it has not resulted in marked physical restrictions. Her symptoms are effectively monitored and managed on an outpatient basis. Follow-up assessments continue to document grossly normal gait, station, ranges of motion, and strength. There is no evidence of the complications anticipated by this listing section." (R. at 15 (emphasis added).) The ALJ's decision supports that conclusion by outlining

the medical evidence, treatment records, Plaintiff's testimony and function reports, medical opinion evidence, and Plaintiff's activities of daily living.  (R. 15-23.)

### 3. Substantial Evidence Supports the ALJ's Conclusion that Plaintiff's Fibromyalgia Does Not Medically Equal Listing 14.09

Plaintiff argues that the ALJ failed to explain why Plaintiff's fibromyalgia does not medically equal Listing 14.09.  (Pl.'s Mem. at 10; Plaintiff's Reply ("Pl.'s Reply") (ECF No. 17) at 2.)  In doing so, she points to record evidence which she contends establishes that her symptoms do medically equal Listing 14.09.  (*See* Pl.'s Mem. at 10-12.)  This evidence includes:

- The issuance of a cane in July 2019;
- Complaints of bilateral elbow, shoulders, knees, neck, and back pain in August 2019 with some improvement with Medrol;
- Her presentation with an antalgic gait and inability to ambulate without her cane in October 2019;
- Pain management with prescription and over-the-counter medicine in February 2020, but a reported increase in pain;
- A report of "trace edema" in her bilateral lower extremities, impaired heel-to-shin coordination, and positive Romberg test in August 2020; reported tenderness to palpation in both knees and mild swelling in knees, feet, and ankles; positive trigger points and paraspinal muscle tenderness;
- Reported unprovoked flares ups that left Plaintiff unable to perform activities of daily living and trouble with sleep in February 2021; and
- Reported walking with a limp and having trouble dressing herself and open items, with pain in response to light palpation in March 2021.  She reported experiencing multiple tender points.

(Pl.'s Mem. at 10-12.)  This evidence still does not establish that Plaintiff's fibromyalgia medically equaled Listing 14.09, whether considered singly or in combination with other impairments.

The ALJ found that Plaintiff's "obesity, fibromyalgia, and combined physical impairments *do not effectively meet the requirements of any listing section in Appendix 1*."  (R. at 14 (emphasis added).)  Further, the ALJ noted that Plaintiff's symptoms were "effectively monitored and managed on an outpatient basis.  Follow-up assessments continue to document grossly normal gait,

station, ranges of motion, and strength.  There is no evidence of the complications anticipated by [Listing 14.09]."  (R. at 15.)  The ALJ supported her conclusion later in the decision.  (R. at 15 (referring to the "[a]s documented in further detail below" evidence).)

For example, the ALJ noted that a 2019 medical assessment found "normal bilateral reflexes, full ranges of motion to all joints, … no evidence of lower extremity edema," and 5/5 strength in all extremities.  (R. at 19 (citations to record omitted).)  Another 2019 evaluation acknowledged Plaintiff's "chronic pain from fibromyalgia" but documented Plaintiff's reports that she can perform her activities of daily living.  (R. at 19.)  Although Plaintiff shifted positions while seated at the exam table, she was able to get on and off the exam table without assistance.  (R. at 19.)  Plaintiff exhibited 5/5 strength in all major muscle groups, 2+ reflexes, intact sensations, and full ranges of motion.  (R. at 19.)  Dr. Steve Hansen found that Plaintiff did not need an assistive device to ambulate.  (R. at 19.)  Later in 2019, Plaintiff remained at full strength and ranges of motion, but medical reports documented swelling and tenderness in her right wrist and finger joints.  (R. at 19.)  In 2020, Plaintiff started using a walker, but physical assessments "continued to note no musculoskeletal evidence of joint pain or muscle pain."  (R. at 19-20.)  No evidence showed significant degenerative changes in Plaintiff's arms, chest, knees, and hands, and she demonstrated a full range of motion in her joints without swelling.  (R. at 20.)

The ALJ sufficiently acknowledged and weighed the medical evidence in arriving at her conclusion regarding the listings.  Contrary to Plaintiff's contention, the ALJ did not cherry-pick "good" evidence from the "bad."  *See Shelley C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341, 362 (4th Cir. 2023).  *See* Pl.'s Mem. at 12.  Rather, the ALJ considered a multitude of sources, including Plaintiff's reported symptoms and medical history, in determining whether Plaintiff's fibromyalgia

met or medically equaled a listing. Substantial evidence supports the ALJ's conclusion that Plaintiff's fibromyalgia does not medically equal Listing 14.09. Specifically:

- Plaintiff did not have a documented need for a walker, bilateral cane, or bilateral crutches or a wheeled and seated mobility device involving the use of both hands (R. at 24; Listing 14.09A.1.a.) Plaintiff testified that she uses both a walker and a cane but uses the cane when walking around the house and is able to walk without the cane (R. at 18.);
- Plaintiff did not have a documented inability to use one upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements or a documented medical need for a one-handed, hand-held assistive device that requires the use of the other upper extremity and a wheeled and seated mobility device involving the use of one hand (R. at 14; Listing 14.09A.1.b);
- Plaintiff did not have medical documentation of one or more peripheral joints in each upper extremity resulting in the inability to perform fine and gross movements effectively or a documented inability to use both upper extremities to the extent that neither can be used to independently initiate, sustain, and complete work-related activities involving gross and fine movements (R. at 13-14; Listing 14.09A.2);
- Plaintiff did not have inflammation or a deformity in one or more peripheral joints with body system involvement and at least two constitutional signs or symptoms; (R. at 14; Listing 14.09B);
- Plaintiff did not have ankylosing spondylitis or other spondyloarthropathies (R. at 14; Listing 14.09C); and
- Plaintiff did not have repeated manifestations of inflammatory arthritis with at least two constitutional signs and one marked limitation in activities of daily living, maintaining social function, or in completing tasks in a timely manner due to limitations in concentration, persistence, and pace (R. at 14; Listing 14.09D).

The ALJ complied with the regulations in determining that Plaintiff's fibromyalgia did not medically equal a listing and substantial evidence supports her conclusion.

### B. The ALJ Erred in Evaluating Plaintiff's Subjective Complaints, Thus Warranting Remand

Plaintiff next argues that the ALJ "impermissibly considered the lack of objective evidence when determining that Plaintiff's subjective complaints were not fully substantiated." (Pl.'s Mem. at 15.) Specifically, Plaintiff alleges that the ALJ committed a "mere variation" of what the Fourth Circuit found impermissible in its *Arakas* decision—the ALJ found that Plaintiff's "subjective

complaints regarding the severity, persistence, and limiting effects of her symptoms were 'not reliable' and not 'completely consistent with the objective evidence.'"  *Arakas*, 983 F.3d at 94. (*See* Pl.'s Mem. at 13.)  The Commissioner, on the other hand, contends that the ALJ properly assessed Plaintiff's complaints related to her fibromyalgia.  (Def.'s Mem. at 14.)  The Commissioner argues that, consistent with *Arakas*, the ALJ balanced Plaintiff's subjective complaints of pain *with* the objective medical evidence and Plaintiff's activities of daily living. (Def.'s Mem. at 17 (citing *Cassandra P. v. Kijakazi*, No. cv-21-3109, 2022 WL 5247186, at *4 (D. Md. Oct. 6, 2022)) (emphasis added).)  The Court cannot reconcile the ALJ's decision with *Arakas*.  Therefore, the Court agrees with Plaintiff that the ALJ erred in assessing Plaintiff's subjective complaints and in making the RFC determination.  This error justifies remand.

The regulations provide for a two-step process in evaluating Plaintiff's subjective complaints of pain in the disability determination.  20 C.F.R.  § 404.1529; *see also* SSR 16-3p. First, the ALJ must determine "whether objective medical evidence presents a 'medically determinable impairment' that could reasonably be expected to produce the claimant's alleged symptoms."  *Arakas*, 983 F.3d at 95 (citing 20 C.F.R. § 404.1529(b); SSR 16-3p).  Second, "after finding a medically determinable impairment, the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled."  *Id.*  The ALJ must consider all available evidence in this determination.  *Id.* The claimant does not need to produce objective evidence to satisfy this second prong.  *Id.*  Indeed, the Fourth Circuit has found that claimants are allowed to rely entirely on subjective evidence of pain to demonstrate that it was sufficiently persistent and severe.  *See Arakas*, 983 F.3d at 96; *see also Shelley C.*, 61 F.4th at 360-61.  The Fourth Circuit explained that by discrediting a plaintiff's

complaints based on the lack of objective medical evidence corroborating them, an ALJ improperly increases the plaintiff's burden of proof. *Arakas*, 983 F.3d at 96.

This standard carries particular importance in cases involving fibromyalgia, a disease known to have symptoms that are "entirely subjective" and where objective indicators such as laboratory tests do not indicate the presence or severity of symptoms. *Arakas*, 983 F.3d at 91, 96 (citing *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996)). The *Arakas* Court held that in a fibromyalgia case, "ALJs may not rely on objective medical evidence (or the lack thereof)— *even as just one of multiple factors*—to discount a claimant's subjective complaints regarding symptoms of fibromyalgia." *Id.* at 97 (emphasis added). If objective medical evidence is considered at all in fibromyalgia cases, "such evidence—along with consistent trigger-point findings—should be treated as evidence *substantiating* the claimant's impairment." *Id.* at 97-98; *see also* SSR 12-2p, 2012 WL 3104869 (July 25, 2012) (explaining how ALJ's should evaluate evidence related to fibromyalgia).

The Court agrees with Plaintiff that the ALJ's analysis, here, does not comply with the *Arakas* holding. The ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. at 18.) The ALJ then discussed objective medical evidence considered in assessing Plaintiff's symptoms and resulting limitations, including: (1) physical assessments showing "grossly atraumatic musculoskeletal findings and no motor or sensory deficits" (R. at 18); (2) "[a] CT of her head and neck not[ing] multilevel mild degenerative changes, but no acute intracranial abnormalities" (R. at 18); (3) "physical examinations continued to note grossly intact neurological findings with no evidence of extremity clubbing, cyanosis, or edema" (R. at 19); (4) a 2019 assessment noting "normal bilateral

reflexes, full ranges of motion to all joints, and no evidence of lower extremity edema," as well as

intact cranial nerves and 5/5 strength in all extremities (R. at 19); (5) another 2019 assessment

where "strength was 5/5 in all major muscle groups, reflexes were 2+ in all tested tendons, and

sensation was intact to light touch throughout" and "[r]anges of motion for the cervical spine,

lumbar spine, and all extremity joints were normal" even though Plaintiff "demonstrated multiple

tender points throughout consistent with fibromyalgia" (R. at 19); and (6) 2021 assessments

showing full strength and range of motion, no musculoskeletal evidence of joint pain or muscle

pain, 5/5 strength bilaterally, no evidence of significant degenerative changes, and full ranges of

motion at all joints without swelling (R. at 19-20).

> The ALJ concluded:
>
> As for [Plaintiff's] physical complaints, her reports of pain are consistently documented throughout the record.  However, as documented above, clinical studies of her head, neck, and extremities document no more than mild irregularities.  She was diagnosed with seropositive rheumatoid arthritis and the symptoms have alternatively been described as fibromyalgia.  Treatment records from 2020-2021 noted reports of falling and balance deficits, with the pain as the source of her balance irregularities.  Clinical studies remained negative for definitive evidence of erosions, joint space narrowing, or effusions.  The nurse practitioner consultative evaluation found strength that was universally 3/5 at the time of the evaluation and [Plaintiff] ambulated with the use of a walker at the time.  Nevertheless, the remaining physical assessments of treating examiners otherwise documented 5/5 strength and grossly normal range of motion.

(R. at 21 (internal record citations omitted).)  The ALJ then made clear that her "assessment is not

*limited to* the objective findings."  (R. at 22 (emphasis added).)  The ALJ explained that she

considered Plaintiff's "subjective symptoms and the effect on her functioning . . . *in conjunction*

with the objective findings."  (R. at 22.)  But in doing so, the ALJ failed to comply with *Arakas*'s

holding, which provides that "ALJs may not rely on objective medical evidence (or lack thereof)—

*even as just one of multiple factors*—to discount a claimant's subjective complaints regarding symptoms of fibromyalgia . . . ."  983 F.3d at 97 (emphasis added).[5]

The Commissioner argues that the ALJ complied with applicable regulations and *Arakas* by considering Plaintiff's subjective complaints alongside "the conservative and grossly outpatient treatment history during the period at issue, the clinical and examination findings of no acute complications, *and* [Plaintiff's] stated ongoing capabilities."  (Def.'s Mem. at 17 (citing R. at 22) (emphasis in original).)  The Court disagrees given *Arakas*'s clear holding that objective medical evidence cannot serve as even one factor considered in discounting Plaintiff's subjective complaints.  983 F.3d at 97.  Importantly, the ALJ in *Arakas* had also considered other evidence, including the claimant's daily activities.  *Id.* at 97.  The Fourth Circuit still held that the ALJ erred in also considering the claimant's normal clinical and laboratory results in assessing subjective complaints regarding symptoms of fibromyalgia.  *Id.* at 97-98.  In *Suzanne O. v. Saul*, the ALJ also considered "other evidence such as Plaintiff's conservative and effective treatment in discrediting Plaintiff's complaints."  No. 3:20-cv-61, 2021 WL 1195930, at *5 (E.D. Va. Mar. 30, 2021).  The Court still found that "review of the ALJ's decision demonstrates that the ALJ relied heavily on the lack of objective medical evidence to find that Plaintiff's statements regarding her symptoms were not as severe as alleged."  *Id.* at *6.  Therefore, the Court concluded "that the ALJ improperly relied on normal medical findings to discredit Plaintiff's subjective complaints."  *Id.*  Here, the

---

[5] In *Jennifer N. v. Kijakazi*, the Court found that the ALJ complied with *Arakas* because "the ALJ did *not* disregard or discredit Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms because they were not consistent with the objective medical evidence or otherwise."  No. 2:22-cv-391, 2023 WL 5688194, at *13 (E.D. Va. July 11, 2023), *report and recommendation adopted*, 2023 WL 5509350 (E.D. Va. Aug. 25, 2023) (emphasis added).  Here, on the other hand, the ALJ did cite objective medical evidence as contradicting Plaintiff's statements about the intensity, persistence, and limiting effects of her fibromyalgia symptoms.  (R. at 18-21.)

ALJ erred in the same way.  *See also Charlene S. v. Saul*, No. DLB-20-853, 2021 WL 2141501, at *3 (D. Md. May 26, 2021) ("[A]fter *Arakas* an ALJ commits legal error simply by discounting a claimant's symptoms using objective evidence.").  This error, which impacts the RFC determination, requires remand.

## V.    CONCLUSION

For the reasons set forth above, the Court concludes that the ALJ erred in evaluating Plaintiff's subjective complaints regarding her fibromyalgia symptoms.  This error requires remand to allow the ALJ to properly consider Plaintiff's subjective complaints in determining Plaintiff's RFC and in compliance with the Fourth Circuit's holding in *Arakas v. Commissioner, Social Security Administration*, 983 F.3d 83, 97 (4th Cir. 2020).  Given that this determination overlaps with the remaining issue raised by Plaintiff, and in light of the recommendation of remand, the third assignment of error need not be addressed by the Court at this time.

Therefore, the Court RECOMMENDS that: (1) Plaintiff's Motion for Summary Judgment (ECF No. 12) be GRANTED IN PART and DENIED IN PART; (2) the Commissioner's Motion for Summary Judgment (ECF No. 16) be DENIED; (3) the final decision of the Commissioner be REVERSED; (4) the case be REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Report and Recommendation; and (5) final judgment be entered under Rule 58 of the Federal Rules of Civil Procedure.

Let the clerk forward a copy of this Report and Recommendation to the Honorable United States District Judge Roderick C. Young and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen**

**(14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

/s/

Summer L. Speight
United States Magistrate Judge

Richmond, Virginia
Date: February 12, 2024

21